UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON VALLEJO,<br>    *Plaintiff*,<br><br>v.<br><br>LOUIS DeJOY,<br>POSTMASTER GENERAL, UNITED<br>STATES POSTAL SERVICE<br>    *Defendant*. | 3:22-CV-01349 (SVN)<br><br><br><br><br>February 12, 2025 |

**RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

In this employment action, Plaintiff Jason Vallejo alleges that Defendant Louis DeJoy, Postmaster General of the United States Postal Service ("USPS"), interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and retaliated against him for taking leave under the FMLA. Defendant seeks summary judgment on these claims, contending that, based on the undisputed material facts, Plaintiff cannot demonstrate that Defendant denied Plaintiff's request for FMLA leave, or that Plaintiff was retaliated against for asserting his FMLA rights. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

**I.   FACTUAL BACKGROUND[1]**

Plaintiff works as a letter carrier at the Stratford, Connecticut Post Office. Pl.'s L.R. 56(a)(2) St., ECF No. 48-1, ¶ 1. During the relevant time period, Plaintiff was approved for intermittent FMLA leave "for one to two-day episodes" due to an injury that limited his ability to

---

[1] The factual background is taken primarily from Plaintiff's Local Rule 56(a)(2) Statement, ECF No. 48-1 ("Pl.'s L.R. 56(a)(2) St."). The facts are undisputed, unless otherwise indicated.

deliver mail, particularly during inclement weather when he would need to walk on foot. *Id.* ¶ 2; Second Am. Compl. ("SAC"), ECF No. 19, ¶ 15. Plaintiff contends that this leave could also be used absent inclement weather if he experienced "general daily flare ups in [his] knee." Pl.'s L.R. 56(a)(2) St. ¶ 2.

USPS policies require employees seeking to take leave, including leave under FMLA, to complete a PS Form 3971 or call an automated attendance system line to apply for leave. *Id.* ¶¶ 4, 13, 20, 24. If an employee calls the automated attendance system line, a Form 3971 is completed by the employee's supervisor after they review the message left on the line. Def.'s Br., ECF No. 47-2, at 7 (citing *Jones v. Potter*, No. 09-2222 (KHV), 2010 WL 3199631, at *4 (D. Kan. Aug. 12, 2010)). The employee's supervisor either approves or denies the request for leave. Pl.'s L.R. 56(a)(2) St. ¶ 20.

USPS employees generally are not permitted to use sick leave that they have not accrued, and the use of sick leave must be approved by a supervisor. *Id.* ¶¶ 19, 20. If a supervisor disapproves sick leave, they must indicate as much on the Form 3971 and state why sick leave was not approved. *Id.* ¶ 20. Generally, postal employees do not need to provide documentation to support a request for three or fewer days of sick leave unless the supervisor "deems documentation desirable for the protection of Postal Service Interests." *Id.* ¶ 28; *see also* Def.'s Br. at 13. When an employee is placed on the so-called "Deems Desirable" list, they must provide "[m]edical documentation or other acceptable evidence of incapacity for work." Pl.'s L.R. 56(a)(2) St. ¶ 28.

Plaintiff sought to use leave in alignment with his FMLA approval on February 1 and February 2, 2021, due to inclement weather. *Id.* ¶¶ 2, 3. He called Defendant's automated attendance system to apply for this leave under the FMLA and requested to use paid sick leave. *Id.* ¶¶ 3, 4, 5. A Form 3971 was generated from the message Plaintiff left on the automated system

and signed by his supervisor; the Form indicated that Plaintiff was approved for 8 hours of leave on February 1, 2021, and 8 hours of leave on February 2, 2021. *See* ECF No. 47-6, Ex. 3 (bottom half of page). That document appears to have a check next to a box that reads "LWOP (*See reverse*)"[2] and next to a box that says "Other: fLWOP." *Id.* "LWOP" denotes leave without pay. Pl.'s L.R. 56(a)(2) St. ¶ 18. "fLWOP" denotes FMLA leave without pay. *Id.* ¶¶ 12, 13, 18. Additionally, in a section titled "Remarks," the Form 3971 generated by Plaintiff's supervisor also states: "NOT IOD[3]: FMLA LEAVE: DOC REQ – Deems Desirable." *See* Ex. 3 (bottom half of page).

On February 4, 2021, Plaintiff also submitted a second, handwritten Form 3971 requesting to take "annual" and "sick" leave, and that FMLA leave was requested, from February 1, 2021, at 8 a.m. until February 3, 2021, at 4:30 p.m.[4] *See* Ex. 3 (top of page); *see also* Pl.'s L.R. 56(a)(2) St. ¶ 21. On February 6, 2021, Plaintiff's supervisor indicated that the request for leave was "disapproved" because there was "[n]ot a sufficient amount of S/L [sick leave] available to use." Ex. 3 (top of page); Pl.'s L.R. 56(a)(2) St. ¶¶ 21, 22. This form did not include any notation related to "Deems Desirable" status. *See* Ex. 3 (top of page). The request was disapproved as to the use of paid leave for those dates, as Plaintiff only had 12 hours in his sick leave bank, but had requested 16 hours of paid sick leave. Pl.'s L.R. 56(a)(2) St. ¶¶ 22, 23. As a result, Plaintiff was permitted to take the leave as he did, but he was not paid for that leave. *Id.* ¶¶ 17, 18. Defendant contends Plaintiff could have submitted a revised Form 3971 requesting to use accrued sick leave up to his available balance, but he did not do so. Def.'s Br. at 10.

---

[2] The reverse side of the form was not included as part of Exhibit 3.
[3] Neither the form nor the parties indicates what "IOD" means.
[4] It seems possible that the reference to February 3, 2021, on this form may have been a typographical error, as the only dates of absence relevant to this case, according to both parties, are February 1 and 2, 2021.

According to Plaintiff, upon returning from leave on February 1 and 2, 2021, he was required to attend a "pre-disciplinary interview," during which he was asked for documentation to support his requested leave on February 1 and 2, 2021. *Id.* ¶ 7. Plaintiff concedes that no discipline arose from this interview. *Id.* ¶ 8. Additionally, Plaintiff asserts that he received a letter on February 5, 2021, notifying him that he was placed on the "'deems desirable' list" for "poor attendance." *Id.* ¶ 9; SAC ¶ 30. According to Plaintiff, being placed on this list puts employees "'in danger of adverse employment consequences, including termination.'" Pl.'s L.R. 56(a)(2) St. ¶ 9 (quoting SAC ¶ 32). According to Defendant, being placed on the "Deems Desirable" list does not limit or restrict any use of sick leave; rather, it just requires an employee to produce documentation showing they were incapacitated for reasons such as injury or illness. Def.'s Br. at 14–15. As with the "pre-disciplinary interview," Plaintiff did not experience any consequences from being placed on the "Deems Desirable" list. Pl.'s L.R. 56(a)(2) St. ¶ 10.

Defendant disputes that Plaintiff was placed on the "Deems Desirable" list at all in 2021, instead providing evidence that he was only ever placed on that list from April 17, 2022, until December 31, 2022. *Id.* ¶¶ 25, 27, 29, 30. Plaintiff asserts that he was placed on the "Deems Desirable" list via a letter from his supervisor in 2021 following his absence on February 1 and 2, 2021, and that the USPS system only reflects that he was placed on the "Deems Desirable" list in 2022 because USPS delayed the processing of this letter. *Id.* ¶¶ 9, 27. Plaintiff does not, however, provide evidence to support the assertion of a processing delay. *See generally* Pl.'s Br., ECF No. 48.

At some later point, Plaintiff determined that he was never paid for February 1 and 2, 2021, despite requesting to use sick leave on those days so that he would be paid while using FMLA leave. Pl.'s L.R. 56(a)(2) St. ¶ 6. According to Defendant, Plaintiff's leave record for the time

4

period including February 1 and 2, 2021, reflects that he took eight hours of FMLA leave on each of these days, which was approved as FMLA leave without pay. *Id.* ¶¶ 11, 12, 13, 14, 17, 18. Plaintiff repeatedly contends that he "was not paid on the actual pay period," but that his "pay was adjusted at a later time," though he does not provide additional detail to clarify what this means. *Id.* ¶¶ 11, 12, 13.

It is undisputed that the Postal Service's Time and Attendance Collection System report shows that Plaintiff took FMLA leave for February 1 and 2, 2021, as indicated by the associated finance number. *Id.* ¶ 14. Plaintiff contends, however, that he was denied FMLA leave for February 1 and 2, 2021. *Id.* ¶ 16. Defendant asserts that Plaintiff was granted FMLA leave (without pay), and Plaintiff asserts that he was denied FMLA leave and that "[m]anagement made the pay adjustment for" those dates the following pay period, but he does not provide further information about what this means in relation to his FMLA claims. *Id.* Further, Defendant asserts that Plaintiff has failed to produce any documentation in discovery showing that he was denied FMLA leave on February 1 and 2, 2021, and Plaintiff states that he could not access paystubs from the employee system for the relevant dates. *Id.* ¶ 15.[5]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the

---

[5] For the first time in his Local Rule 56(a)(2) Statement of Facts, in a section titled "Additional Material Facts," Plaintiff asserts that he experienced financial hardship, anxiety, and debt related to instances of alleged "delayed" pay "in retaliation for requesting FMLA leave." *See* Pl.'s L.R. 56(a)(2) St. ¶¶ 31–36. Plaintiff provides no evidence other than his own "Affirmation" to support these assertions. Because Plaintiff cannot raise new claims for the first time in his opposition to Defendant's motion for summary judgment, the Court will not consider these assertions. *See Irizarry v. Lily Transp. Corp.*, 266 F. Supp. 3d 600, 604 (D. Conn. 2017) ("A complaint cannot be amended merely by raising new facts and theories in plaintiff's opposition papers, and hence such new allegations and claims should not be considered in resolving the motion [for summary judgment].") (citation omitted).

determination of the fact might "affect the outcome of the [law]suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

6

inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). The Court also understands its obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).

### III. DISCUSSION

For the reasons discussed below, Defendant's motion for summary judgment is GRANTED as to Plaintiff's FMLA interference and retaliation claims.

#### A. The FMLA

The FMLA provides "broad protections to employees who need to take time away from work to deal with serious health conditions." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017). The FMLA applies to Postal Service employees. *See* 29 U.S.C. § 2611(4)(A)(iii).

Under the FMLA, an eligible employee is entitled to take up to twelve weeks of leave in a year to care for a "serious health condition that makes the employee unable to perform the functions of [his] position," 29 U.S.C. § 2612(a)(1)(D), with an assurance he will be able to return to his position or one that is equivalent. *See Woods*, 864 F.3d at 166. This leave is not required to be paid leave. *See* 29 U.S.C. § 2612(c). Indeed, the FMLA does not "require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave." 29 U.S.C. § 2612(d)(2)(B). Rather, an eligible employee may elect to substitute any accrued paid vacation leave, personal leave, or medical or sick leave

7

for leave provided under the FMLA. *Id.*; *see also* 29 C.F.R. § 825.207(a) ("Generally, FMLA leave is unpaid leave. However, under [some] circumstances . . . FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. . . . An employee's ability to substitute accrued paid leave is determined by the terms and conditions of the employer's normal leave policy."); *Santos v. Knitgoods Workers' Union, Loc. 155*, 252 F.3d 175, 178 (2d Cir. 2001) ("[T]he FMLA neither creates nor supplements an employer's obligation to pay benefits.").

It is unlawful for any employer to either "interfere with" the employee's exercise of his FMLA rights or retaliate against an employee who exercises their FMLA rights or opposes any practice made unlawful by the FMLA. 29 U.S.C § 2615(a); *Woods*, 864 F.3d at 166. Thus, the FMLA authorizes two distinct claims: (1) a claim of interference, when the defendant has impeded the plaintiff's exercise of his FMLA rights, and (2) a claim of retaliation, when the plaintiff exercised his FMLA rights or opposed perceived unlawful conduct and then was subjected to an adverse employment action. *Woods*, 864 F.3d at 166.

B.  Plaintiff's FMLA Interference Claim

First, the Court finds that summary judgment is appropriate in Defendant's favor as to Plaintiff's claim for interference with his FMLA rights.

As noted above, it is unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the FMLA. 29 U.S.C. § 2615(a)(1); *see also* 29 C.F.R. § 825.220(a)(1) ("The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights."). Interference with the exercise of FMLA rights may include, for example, "refusing to authorize FMLA leave" or "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Thus, an employee may seek relief when his employer "has prevented or otherwise impeded [his] ability to exercise

rights under the FMLA." *Woods*, 864 F.3d at 166.  To prevail on an interference claim, a plaintiff must establish:  (1) that he was an eligible employee under the FMLA; (2) that the defendant is an employer for purposes of the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied FMLA benefits to which he was entitled.  *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

For interference claims, "the issue is simply whether the employer provided the employee with the entitlements set forth in the FMLA."  *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 69 (D. Conn. 2014).  Thus, an employer may be held liable for an interference claim "even if [it] never subjectively intended to interfere with [the] plaintiff's FMLA rights."  *Blackett v. Whole Foods Mkt. Grp., Inc.*, No. 3:14-cv-1896 (JAM), 2017 WL 1138126, at *6 (D. Conn. Mar. 27, 2017).

Summary judgment for Defendant is appropriate on Plaintiff's FMLA interference claim.  The parties do not dispute that Plaintiff was an eligible employee under the FMLA, that Defendant is an employer under the FMLA, that Plaintiff was entitled to leave under the FMLA, or that Plaintiff gave notice of his intention to take leave to Defendant.  *See* Def.'s Br. 6; Pl.'s L.R. 56(a)(2) St. ¶¶ 1–4.  They dispute only whether Plaintiff was denied the FMLA benefits to which he was entitled.  *See* Def.'s Br. at 6; Pl.'s L.R. 56(a)(2) St. ¶¶ 12, 15, 16.  Even viewing the evidence in the light most favorable to Plaintiff, the record demonstrates Defendant did not deny Plaintiff the FMLA benefits to which he was entitled.

First, Plaintiff's leave record for February 1 and 2, 2021, bears the notation "ufLWOP-8," with the "f" standing for FMLA leave.  *See* ECF No. 47-5, Ex. 2 at 1 ("Precede with letter 'F' when absence is recorded as Family and Medical Leave Act (FMLA) and with 'U' when absence

9

is recorded as unscheduled on PS Form 3971."). Similarly, the Form 3971 generated for these absences shows Plaintiff's leave was designated "fLWOP," with the 'f' again denoting that FMLA leave was approved. ECF No. 47-6, Ex. 3 (bottom of page). Further, in the remarks section of the Form 3971, the words "FMLA LEAVE" appear. *Id.* From this evidence, no reasonable jury could conclude that Defendant denied Plaintiff the opportunity to use FMLA leave on February 1 and 2, 2021.

Although Plaintiff contends that Defendant interfered with his rights under the FMLA, *see* Pl.'s Br. at 1, he provides no evidence to support this assertion. To the extent Plaintiff contests Defendant's evidence, he seems to assert he was not paid for the time taken off on February 1 and 2, 2021, or that Defendant adjusted pay for those dates at a later pay period, or that he was not able to access the necessary documentation to prove his claim. *See, e.g.*, Pl.'s L.R. 56(a)(2) St. ¶¶ 12 (disputing the assertion that FMLA leave was granted by stating that the noted form "was generated but for the following pay period adjustment" without providing evidence or argument to support that assertion); 15 (disputing the assertion that Plaintiff did not produce any document in discovery showing that he was denied FMLA leave for February 1 and 2, 2021, because he is "not able to retrieve pay stubs from [the] employee website, liteblue, because the payroll options do not go back to early 2021 paystubs."). But Plaintiff had the opportunity to seek and obtain evidence to support these assertions from Defendant during discovery and seemingly failed to do so. Because Plaintiff has not made "a sufficient showing on an essential element of [his] case with respect to which [he has] the burden of proof," namely that he was denied FMLA benefits to which he was entitled, the Court finds that summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

To the extent that Plaintiff asserts that Defendant interfered with his FMLA rights because he was not paid for the FMLA leave taken on those dates, summary judgment also is appropriate. Nothing under the FMLA requires an employer to pay an employee for FMLA leave. 29 U.S.C. § 2612(d)(2)(B); *see also* 29 C.F.R. § 825.207(a). In fact, such leave is generally unpaid. *See id.* Although Plaintiff had sought to take the FMLA leave as paid leave using hours from his sick leave, his request was denied because he had insufficient accrued sick leave hours to cover February 1 and 2, 2021. Pl.'s L.R. 56(a)(2) St. ¶¶ 21, 22; Ex. 3 (top of page). But the denial of *paid* leave is different from the denial of *FMLA* leave. The record reflects that Plaintiff was permitted to take FMLA leave, but that such leave was not paid, in alignment with USPS policy, which permits employees to take only leave that has been earned. *See* Pl.'s L.R. 56(a)(2) St. ¶¶ 13, 14, 19, 22, 23. Further, Defendant asserts, and Plaintiff does not refute, that Plaintiff could have resubmitted a revised leave slip requesting to use his twelve hours of accrued sick leave, such that only four hours would be unpaid, but he did not do so. *See* Def.'s Br. at 10. As there is no genuine dispute about whether Defendant interfered with Plaintiff's rights under FMLA by not permitting him to take the February 1 and 2, 2021, leave as paid leave, the Court grants summary judgment to Defendant on Plaintiff's interference claim.

C. Plaintiff's FMLA Retaliation Claim

Likewise, the Court grants Defendant's summary judgment motion as to Plaintiff's claim for FMLA retaliation.

In addition to interfering with an employee's exercise of his FMLA rights, it is also unlawful for any employer to retaliate against an employee who exercises his FMLA rights. *See* 29 U.S.C. § 2615. Retaliation claims under the FMLA "involve an employee . . . exercising [his] rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some

adverse employment action by [his] employer." *Woods*, 864 F.3d at 166. The Court analyzes such retaliation claims under the burden-shifting framework the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Graziadio*, 817 F.3d at 429.

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *Id.*; *see also Woolf v. Strada*, 792 F. App'x 143, 145 (2d Cir. 2020) (summary order). This burden has been described as "*de minimis*." *Wanamaker*, 11 F. Supp. 3d at 72. To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that (1) "he exercised rights protected under the FMLA"; (2) "he was qualified for his position"; (3) "he suffered an adverse employment action"; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio*, 817 F.3d at 429.

If the plaintiff establishes a *prima facie* case, "the defendant must demonstrate a legitimate, non-discriminatory reason for its actions." *Graziadio*, 817 F.3d at 429. If the defendant does so, "the plaintiff must then show that [the] defendant's proffered explanation is pretextual." *Id.* The plaintiff "may satisfy this burden by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reason, or by providing evidence such that a reasonable factfinder could conclude that the prohibited reason was a motivating factor in the adverse employment action." *Greenberg v. State Univ. Hosp. – Downstate Med. Ctr.*, 838 F. App'x 603, 606 (2d Cir. 2020) (summary order) (internal citations and quotation marks omitted); *see also Woods*, 864 F.3d at 168 (rejecting "but for" causation standard for FMLA retaliation claims). The ultimate burden of persuading the trier of fact that the defendant retaliated against the plaintiff remains at all times with the plaintiff. *See, e.g.*, *Szestakow v. Metro. Dist. Comm'n*,

No. 3:10-cv-567 (WWE), 2016 WL 4639129, at *4 (D. Conn. Sept. 6, 2016) (recognizing a plaintiff's ultimate burden of proving that retaliation caused the adverse employment action).

Summary judgment is appropriate as to Plaintiff's FMLA retaliation claim because Plaintiff has failed to satisfy his *de minimis* burden of establishing a *prima facie* case of retaliation under the FMLA. Plaintiff has shown that he exercised his protected FMLA rights by requesting leave for February 1 and 2, 2021, and the parties appear to agree that Plaintiff was qualified for his position. Plaintiff, however, has not demonstrated that he suffered an adverse employment action in relation to his use of his FMLA benefits on February 1 and 2, 2021.

For purposes of the FMLA's anti-retaliation provision, a materially adverse action "is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011). Adverse employment actions include "'materially adverse change[s] in the terms and conditions of employment,' such as 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation,' as well as 'refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.'" *Peterson v. Town of Waterford*, No. 3:21-cv-332-SVN, 2023 WL 2742343, at *6 (D. Conn. Mar. 31, 2023) (quoting *Powell v. Dep't of Educ.*, No. 14-CV-2363 (PKC) (SLT), 2018 WL 4185702, at *6 (E.D.N.Y. Aug. 30, 2018) (alteration in original)). For a reprimand to rise to the level of an adverse employment action, however, a plaintiff must be able to demonstrate that "negative consequences resulted" from the reprimand. *Sosa v. N.Y.C. Dep't of Educ.*, 819 F. App'x. 30, 34 (2d Cir. 2020) (summary order); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019) (noting, in disability

13

discrimination context, that even "[h]arsh reprimands do not rise to the level of an adverse employment action where there is no tangible effect on employment").

Although the parties dispute whether Plaintiff was placed on the "Deems Desirable" list in 2021, that dispute is ultimately immaterial. Even if Plaintiff were placed the "Deems Desirable" list shortly after returning from FMLA leave in 2021, that would not constitute an adverse employment action because Plaintiff admits he did not suffer any actual consequences or tangible effect on his employment from allegedly being placed on that list. *See* Pl.'s L.R. 56(a)(2) St. ¶ 10. Absent such consequences, placement on the "Deems Desirable" list is insufficient to establish an adverse employment action, in that it would be insufficient to dissuade a reasonable worker from exercising his legal rights. *See Sosa*, 819 F. App'x. at 34; *Millea*, 658 F.3d at 164. Other courts have held, in identical factual contexts, that being placed on the "Deems Desirable" list and being required to submit documentation before being allowed to use medical leave does not constitute an adverse employment action. *See, e.g.*, *Royston v. DeJoy*, No. 1:18-cv-1697, 2021 WL 4502217, at *8 (N.D. Ill. Sept. 30, 2021) (delayed pay and the inconvenience of wading through "a perhaps annoying amount of red tape" to take medical leave does not rise to the level of an adverse action); *Haywood v. Brennan*, No. 2:18-cv-2473 (MSN) (cgc), 2020 WL 7480807, at *15 (W.D. Tenn. Dec. 18, 2020), *report and recommendation* adopted, 2021 WL 3885083 (W.D. Tenn. Aug. 31, 2021), *aff'd sub nom. Haywood v. DeJoy*, No. 21-6030, 2022 WL 16647967, at *3 (6th Cir. Oct. 6, 2022) (concluding that being placed on the "deems desirable" list did not constitute an adverse employment action in the Title VII context); *Kittren v. Donahoe*, No. 8:14-cv-612-T-36AEP, 2015 WL 9258246, at *3 (M.D. Fla. Dec. 18, 2015) (same). This Court agrees.

Similarly, even if Plaintiff had been required to attend a "pre-disciplinary interview" where he was asked to provide documentation supporting his leave request, that too would fail to establish

14

an adverse employment action. Attending a single "pre-discipline" meeting and providing documentation may be inconvenient, but inconvenience alone fails to constitute an adverse employment action—particularly where, as here, Plaintiff concedes that no discipline arose from that alleged meeting. *See* Pl.'s L.R. 56(a)(2) St. ¶¶ 7, 8; *Fox*, 918 F.3d at 71 (noting that "mere inconvenience" is insufficiently "disruptive" to constitute an adverse employment action).

Because Plaintiff cannot demonstrate that he experienced an adverse employment action, he fails to establish a *prima facie* claim of retaliation under the FMLA, and the Court need not reach the remaining steps of the *McDonnell-Douglas* analysis. Summary judgment is appropriate as to Plaintiff's FMLA retaliation claim.

## IV. CONCLUSION

For the reasons described herein, Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 12th day of February, 2025.

                                              /s/ Sarala V. Nagala

                                              SARALA V. NAGALA
                                              UNITED STATES DISTRICT JUDGE